# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CRISTINA PANTELLA,

          Plaintiff,

v.                                  Case No. 8:22-cv-2883-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

          Defendant.

_____

## OPINION AND ORDER[2]

## I.  Status

Cristina Pantella ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of bulging discs and pain in her spine, fibromyalgia, arthritis of the knees and spine, high blood pressure, asthma, depression, and anxiety. Transcript of Administrative Proceedings (Doc. No. 6; "Tr." or "administrative transcript"),

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 7), filed February 16, 2023; Reference Order (Doc. No. 9), entered February 24, 2023.

filed February 16, 2023, at 65-66, 88, 267. Plaintiff protectively filed an application for DIB on January 24, 2020, alleging a disability onset date of November 11, 2018.[3] Tr. at 234-25. The application was denied initially, Tr. at 65-82, 83, 84, 86, 120-26, and upon reconsideration, Tr. at 87-110, 111, 112, 114, 128-40.[4]

On November 23, 2021, an Administrative Law Judge ("ALJ") held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 40-64. At the time of the hearing, Plaintiff was forty-six (46) years old. Tr. at 45. On February 10, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 22-34.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her counsel. See Tr. at 11-12 (Appeals Council exhibit list and order), 220-22 (request for review), 347-48 (brief). On October 21, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 8-10, thereby making the ALJ's Decision the final decision of the

---

[3]     Although actually completed on January 27, 2020, see Tr. at 234, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as January 24, 2020, see, e.g., Tr. at 65, 88.

[4]     Some of these cited documents are duplicates.

[5]     The hearing was held via telephone with Plaintiff's consent because of extraordinary circumstances caused by the early stages of the COVID-19 pandemic. Tr. at 42-43, 144-57, 204, 206, 218-19.

Commissioner. On December 19, 2022, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff contends the ALJ: 1) "failed to properly consider the persuasiveness of [Thomas C.] Tolli[, M.D.]'s opinion"; 2) "failed to properly consider [Plaintiff's] subjective complaints"; and 3) "failed to properly consider [Plaintiff's] mental limitations and her symptoms stemming from fibromyalgia in combination." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 18; "Pl.'s Mem."), filed July 20, 2023, at 3, 15, 20 (emphasis and capitalization omitted). On September 18, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing the issues. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 24-33. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 11, 2018, the alleged onset date." Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia; degenerative disc disease; bilateral knee degenerative joint disease; and asthma." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a), except [Plaintiff] can occasionally push and pull with the bilateral lower extremities. [Plaintiff] can occasionally perform postural activity but never climb ladders, ropes, or scaffolds and never crouch. [Plaintiff] can frequently handle and finger bilaterally. [Plaintiff] cannot have more than occasional exposure to extreme cold, atmospheric irritants such as dust, odors, fumes, and gasses and workplace hazards such as unprotected heights and moving machinery.

Tr. at 27-28 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a Customer Service Representative." Tr. at 32 (emphasis and citation omitted). The ALJ then made alterative findings at the fifth and final step of the sequential inquiry. Tr. at 32-33. After considering Plaintiff's age ("43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date" but "subsequently changed age category to a younger individual age 45-49"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 32 (some emphasis and citations omitted), such as "Lens Inserter," "Document Scanner," and "Final Assembler," Tr. at 33 (emphasis and some capitalization omitted). The ALJ concluded Plaintiff "has

not been under a disability . . . from November 11, 2018, through the date of th[e D]ecision." Tr. at 33 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

For ease of discussion, the undersigned first addresses the issue about Dr. Tolli's opinion (Plaintiff's treating orthopedic surgeon). Second, the undersigned addresses together the issues about subjective symptoms generally (Plaintiff's issue two) and alleged mental and fibromyalgia limitations and symptoms (Plaintiff's issue three).

### A. Treating Physician's Opinion

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Tolli. Pl.'s Mem. at 5-15. According to Plaintiff, the ALJ "fails to cite specifically to any medical evidence" in support of the finding that Dr. Tolli's opinion is not supportable or consistent with the evidence. <u>Id.</u> at 7. Moreover, Plaintiff alleges the ALJ failed to accurately and logically state reasons for finding the opinion not supported. <u>Id.</u> at 11-12. Responding, Defendant contends the ALJ correctly analyzed Dr. Tolli's opinion, and the ALJ's reasons for finding it not supported or consistent are supported by substantial evidence. Def.'s Mem. at 5-10.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844, 5844 (January 18, 2017); <u>see also</u> 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting

the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical condition, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates

---

[7]        Plaintiff filed her DIB application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

[the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[8]

---

[8]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

- 9 -

Here, Dr. Tolli authored a Physical Medical Source Statement on December 2, 2020, Tr. at 482-85, and filled out an Onset Date Questionnaire on December 1, 2020, Tr. at 486. Listing Plaintiff's diagnoses and an "unknown" prognosis, Dr. Tolli wrote that Plaintiff has "low back pain." Tr. at 482. Asked to "[i]dentify the clinical findings and objective signs," Dr. Tolli wrote, "see attached notes." Tr. at 482. According to Dr. Tolli, Plaintiff's pain would frequently interfere with her attention and concentration. Tr. at 482. Dr. Tolli opined Plaintiff can only walk one city block, can sit and stand thirty minutes at a time and two hours total, will need unscheduled breaks twice a day lasting fifteen minutes, and can rarely lift and carry less than ten pounds. Tr. at 483. Dr. Tolli stated Plaintiff would need to lie down for four hours per eight-hour day. Tr. at 484. Dr. Tolli indicated that Plaintiff would be expected to miss four days per month of work. Tr. at 484. According to Dr. Tolli, the assigned limitations have been present since October 14, 2020 (significantly after Plaintiff's alleged onset date of November 11, 2018). Tr. at 486.

The ALJ, in analyzing Dr. Tolli's opinion, wrote the following:

> The opinion of Thomas Tolli, M.D. is not persuasive. Dr. Tolli has opined a number of limitations that would preclude even a narrow range of sedentary exertion. Dr. Tolli assessed the ability to rarely lift less than 10 pounds and the ability to sit for only 2 hours total per 8-hour workday. The opinion is not supportable or consistent with the evidence. In support of his opinion, Dr. Tolli only generally cited a basis including the physical examination, imaging studies, surgical

- 10 -

> findings, etc, and Dr. Tolli did not provide any specific information as a basis. Additionally, the extreme limitations such as sitting for only 2 hours per day is inconsistent with the overall evidence including [Plaintiff's] work activity during the period in which disability is alleged and also the lack of reports of any obvious discomfort while sitting during office visits.

Tr. at 31-32 (citation omitted).

The ALJ's findings are adequate and supported by substantial evidence. First, Plaintiff readily admits she worked part-time at a golf club after the alleged onset date. See Pl.'s Mem. at 12-13.[9] Second, the ALJ's observation that Dr. Tolli did not provide any specifics to support his assigned limitations is accurate. See Tr. at 482. In fact, Dr. Tolli refers the reader to his attached notes, see Tr. at 482, which generally are not supportive of the gross limitations he assigns, see, e.g., Tr. at 612 (post-surgery August 23, 2021 record from Dr. Tolli indicating Plaintiff reported "improvement in her symptoms" and "is satisfied with her current level of pain and measures taken for relief"). Nor are other records supportive of Dr. Tolli's assigned limitations. See, e.g., Tr. at 606 (primary care notation that Plaintiff reported being able to "walk several blocks without getting short of breath"). Third and finally, the ALJ's finding about no obvious discomfort during office visits is supported both in Dr. Tolli's notes, and

---

[9]     Plaintiff quarrels with a finding the ALJ made elsewhere in the Decision—that her work was without accommodation. See Pl.'s Mem. at 13. This is resolved infra in the discussion regarding the ALJ's findings on Plaintiff's subjective complaints.

in notes from her primary care provider. <u>See</u> Tr. at 614, 618 (Dr. Tolli's notes indicating no distress), 594, 598, 601, 604, 607 (primary care notes indicating no acute distress). The ALJ's findings are supported by substantial evidence.

**B. Subjective Symptom Evaluation (Including Mental and Fibromyalgia Allegations)**

Plaintiff argues the ALJ erred in evaluating her subjective complaints of pain and other symptoms. Pl.'s Mem. at 15-20. According to Plaintiff, the ALJ did not provide solid reasons to discount her allegations, and the ALJ erred in determining she was working part-time without accommodation. <u>See id.</u> at 17-20. As for her alleged mental limitations, Plaintiff indicates she has anxiety with panic attacks, and the ALJ failed to account for the condition in the RFC. <u>Id.</u> at 20-23. Regarding fibromyalgia, Plaintiff alleges the ALJ improperly evaluated the condition and erroneously relied on objective evidence to discount her allegations. <u>Id.</u> at 21-23. Responding, Defendant asserts the ALJ evaluated all of the subjective complaints in accordance with the governing standards, and the ALJ's findings are supported by substantial evidence. <u>See</u> Def.'s Mem. at 11-20.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the

objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284

F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869.[10]  Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims."  Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-

---

[10]     Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id.

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. When an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

When evaluating mental impairments, the Regulations direct the use of a "special technique." 20 C.F.R. §§ 404.1520a(a), (b) and 416.920a(a), (b). In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(b)(2), (c) and 416.920a(b)(2), (c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in the listings: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00E. These broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary,

it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The special technique for mental impairments used in earlier steps is distinct from the analysis of a claimant's RFC. See 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); see also Winschel v. Comm'r, 631 F.3d 1176, 1180 (11th Cir. 2011). Nevertheless, the ALJ in assessing an RFC and later posing a hypothetical to a VE should take into account the special technique findings and either "implicitly account for [any] limitation[s]" or "indicate that medical evidence suggest[s a claimant's] ability to work [is] unaffected by th[e] limitation[s]." Winschel, 631 F.3d at 1180.

Here, the ALJ, addressing at step two Plaintiff's "mental impairments of affective disorder and anxiety disorder," found they "do not cause more than minimal limitation in [Plaintiff's ability to perform basic mental work activities

and are therefore nonsevere." Tr. at 25. The ALJ then found as to the four broad functional areas that Plaintiff has "no limitation" in "understanding, remembering, or applying information"; "no limitation" in "interacting with others"; "mild limitation" in "concentrating, persisting or maintaining pace"; and "no limitation" in "adapting or managing oneself." Tr. at 25-26.

Plaintiff does not challenge any of these findings, instead arguing that the ALJ should have included limitations for Plaintiff's anxiety in the RFC. See Pl.'s Mem. at 20-23. The ALJ, however, determined that given the lack of severity of mental limitation, the RFC did not need to incorporate mental limitations. See Tr. at 26 (discussion of non-severity), 27-28 (RFC), 31 (observation that "state agency psychological consultants determined that there was insufficient evidence to make a finding regarding the mental impairments"). This finding is supported by substantial evidence even though the record does document diagnosis and treatment for the disorders. See, e.g., Tr. at 603 (primary care note dated June 2, 2021 stating, "Patient states that overall she is doing very well," and "Patient states that her mood disorder is [under] good control"), 600 (February 3, 2021 note with similar observations).

As for the fibromyalgia allegations, the ALJ specifically recognized binding Eleventh Circuit authority stating that "the 'hallmark' of fibromyalgia is 'a lack of objective evidence." Tr. at 31 (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)). The ALJ credited much of Plaintiff's subjective

allegations about the fibromyalgia, stating she had "taken [Eleventh Circuit authority] into account and reduced the [RFC] to sedentary exertion with postural and manipulative limitations due to the subjective complaints." Tr. at 31.

The ALJ then reasoned that Plaintiff's ability to perform some work, together with her testimony that she could stand for at least two hours at a time before stretching out her legs, showed the ability to perform sedentary work. Tr. at 31; see Tr. at 53 (Plaintiff testifying her current job requires standing about five hours, "[b]ut within two hours, [she] start[s] to get the muscle spasms and cramping down the leg"). The ALJ did not err in addressing Plaintiff's complaints relating to her fibromyalgia, and the ALJ's assigned RFC in that regard is supported by substantial evidence. See, e.g., Tr. at 56 (Plaintiff testifying she gets fibromyalgia symptoms if she does not take her medication, which includes "feelings of pins and needles and just bruising feeling of [her] skin," but medication relieves the symptoms).

Regarding Plaintiff's subjective complaints overall, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 28. The ALJ detailed the medical evidence which showed "a number of objective

examination findings that are largely normal and in marked contrast to the very severe limitations alleged." Tr. at 28.

The ALJ also found Plaintiff's work activity after the alleged onset date was "inconsistent with the severe limitations alleged." Tr. at 28-29. Plaintiff quarrels with the ALJ's finding in one place in the Decision that Plaintiff's "testimony did not indicate any special accommodations," Tr. at 29, but this finding is largely supported as to Plaintiff's then-current position, see Tr. at 54 (Plaintiff testifying she does not receive accommodations at work, no "breaks or anything, no," and "[n]o ramps"), 55 (Plaintiff testifying she temporarily leaves her computer to "stretch out [her] legs" when she gets a muscle spasm).

The ALJ further noted that there was a lack of evidence of treatment for anything noteworthy around the November 11, 2018 alleged onset date. Tr. at 29. In arriving at the RFC, the ALJ relied in part on Plaintiff's own "testimony that she can stand for 2 hours before she experiences leg [c]ramps." Tr. at 32.

In sum, the ALJ did not reversibly err in evaluating Plaintiff's subjective complaints, and the ALJ's findings are supported by substantial evidence.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2024.

James R. Klindt

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record